IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JAMES SNEED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-085 |
| | ) | |
| WHEELER CORRECTIONAL | ) | |
| FACILITY; JASON MEDLIN, Warden; | ) | |
| DR. HAE; T. UEAL, Nurse; DR. NICHOLES; | ) | |
| W. BROWN, Nurse, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

In his complaint, Plaintiff names as Defendants: (1) Wheeler Correctional Facility, (2) Jason Medlin, Warden; (3) Dr. Hae; (4) T. Ueal, Nurse; (5) Dr. Nicholes; and (6) W. Brown, Nurse. (Doc. no. 15, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On March 19, 2013, Plaintiff had a dental appointment to extract his teeth with Dr. Hae and Nurse T. Ueal. (Id. at 5.) Plaintiff informed Dr. Hae and Nurse Ueal that he was in extreme pain and needed his teeth extracted, and they informed him that he was put on the dentures list but apparently did not extract his teeth. (Id.) Plaintiff did not have any of his teeth extracted until six months later when three of his fractured teeth were extracted at an appointment with Dr. Hae and Nurse Ueal on September 19, 2013. (Id.) Although Plaintiff was told he would have a follow-up visit, no such visit occurred. (Id.) Instead, Plaintiff continued writing to the medical department and was charged five dollars for each visit to the medical department. (Id.) Seven months after his initial appointment with Dr. Hae and Nurse Ueal, Nurse Ueal told Plaintiff that he could receive pain medication and was still on the extraction list. (Id.) On December 16, 2013, Plaintiff put in a sick call to Nurse W. Brown about how he could not eat or sleep due to pain from his teeth. (Id.)

In January of 2014, ten months after his initial appointment, Dr. Nicholes examined Plaintiff and put him on the list again to have his broken teeth extracted. (Id.) Plaintiff put in another sick call on March 5, 2015 to Nurse Brown due to his toothaches and was told again that he was on the waiting list for extraction. (Id. at 6.) On April 15, 2014, Plaintiff put in another sick call and was told by Nurse Ueal that he was on the waiting list for extraction but could receive pain medication for a five-dollar copay. (Id.) Plaintiff's last three teeth were extracted on June 12, 2014 by Dr. Hae and Nurse T. Ueal, and Plaintiff was charged five dollars for this appointment. (Id.) On June 25, 2014, Plaintiff put in a sick call for dentures, and prison staff put him on a soft tray diet due to his raw mouth. (Id.) Even though Plaintiff was placed on a soft tray diet, the prison failed to actually adhere to the diet. (Id.) Due to this, Plaintiff put in a sick call on August 15, 2014 about how he could not chew his food and was forced to swallow it

whole. (Id.) Plaintiff was informed by Nurse Ueal and Dr. Hae that dentures were not guaranteed and that he could be put on a soft tray diet if he were to show up for an appointment. (Id.) This was told to him in spite of the fact that he was already on a soft tray diet. (Id.)

Eight days later, an infection developed in Plaintiff's lower right jaw. (Id.) Plaintiff put in a sick call about the infection on August 27, 2014 and was brought in for a dental appointment with Dr. Hae and Nurse Ueal. (Id.) Dr. Hae and Nurse Ueal only gave Plaintiff a mouth rinse and told him once again that he was on the waiting list for dentures. (Id.) After thirteen days of the lower jaw infection, Plaintiff put in another sick call telling the dental department that part of a tooth was left in his lower right jaw. (Id. at 6-7.) Dr. Nicholes and Nurse Brown informed Plaintiff that the tooth would work its way out. (Id. at 7.) On October 2, 2014, Plaintiff put in another sick call for dentures because he could not chew his food properly and was having problems digesting his meals. (Id.) At this appointment, Dr. Nicholes and Nurse Brown once again told him that he was on the waiting list for dentures. (Id.) On January 14, 2015, Plaintiff wrote to medical requesting dentures and asserting that the prison does not adhere to his soft tray diet and was told again that he was on the waiting list. (Id.) Plaintiff has now been on the waiting list for dentures for approximately twenty-three months and has yet to receive them, leading to a raw mouth and problems eating his food. (Id.) Plaintiff requests $500,000 in compensatory damages for the deliberate indifference shown by prison staff. (Id.)

**B.     DISCUSSION**

    **1.     Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a

defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d

4

1314, 1320 (11th Cir. 2006).

> **2. Plaintiff Fails to State a Claim against Defendant Wheeler Correctional Facility.**

Plaintiff has failed to state a viable § 1983 claim against Defendant WCF for two reasons. First, Plaintiff fails to mention WCF in his statement of claim. The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")).

Second, WCF is not subject to liability in a § 1983 suit. According to Fed. R. Civ. P. 17(b)(3), the general rule is that the "capacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (1988) (quotation omitted).

Jails and prisons are not legal entities subject to liability in § 1983 claims. E.g., Welty v. Wheeler Corr. Facility, CV 312-034, 2012 WL 5722303, at *2 (S.D. Ga. Sept. 28, 2012) report and recommendation adopted, CV 312-034, 2012 WL 5721803 (S.D. Ga. Nov. 15, 2012) (finding WCF is not subject to liability in a § 1983 suit); Smith v. Chatham Cnty. Sheriff's

Dep't, CV 412-224, 2012 WL 5463898, at *2, (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued"); Sebastian v. Maynard, CV 510-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) (holding that county detention center "is not a legal entity that is subject to suit under 42 U.S.C. § 1983"); Bolden v. Gwinnett Cnty. Det. Ctr. Med. Admin. Med. Doctors, CV 09-1966, 2009 WL 2496655, at *1 (N.D. Ga. Aug. 12, 2009) ("Jails . . . are not legal entities subject to suit under § 1983 at all."). Thus, even if Plaintiff had made any factual allegations against WCF, it is not subject to liability in a § 1983 suit and must be dismissed from this action.

### 3. Plaintiff Fails to State a Claim Against Defendant Medlin.

Plaintiff also fails to state a claim against Defendant Medlin, Warden at WCF, because he fails to mention him in his statement of claim and the only possible theory of liability would be supervisory. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold a supervisor liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff includes no substantive allegations relating to Defendant Medlin's participation in the violation.

Plaintiff must therefore allege a causal connection between Defendant Medlin and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [s]he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not allege a history of widespread abuse or that Defendant Medlin had any custom or policy in place that resulted in deliberate indifference. Nor does Plaintiff allege any facts to support an inference that Defendant directed any subordinates to act unlawfully or knew that they would act unlawfully and failed to stop them from doing so. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant Medlin.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims against Defendants WCF and Medlin be **DISMISSED** with prejudice for failure to state a claim.

SO REPORTED and RECOMMENDED this 17th day of April, 2015, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA